IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JAYME ROUNTREE, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:23-CV-1089-N-BW |
| | § | |
| FEDEX GROUND PACKAGE | § | |
| SYSTEM, INC., | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pending before the Court is Defendant FedEx Ground Package System, Inc.'s

("FedEx")[1] Motion for Summary judgment pursuant to Rule 56(a) of the Federal

Rules of Civil Procedure. (Dkt. No. 47.) Also pending is FedEx's Motion to Strike

Valarie Reddick's Declaration, which Plaintiff Jayme Rountree submitted as

evidence in opposition to FedEx's Motion for Summary Judgment. (*See* Dkt. No.

53.) This case was referred to the undersigned United States magistrate judge for

pretrial management under 28 U.S.C. § 636(b) and Special Order No. 3-354. (*See*

Dkt. No. 41.)

Having considered the relevant pleadings, the evidence, and the applicable

law, and for the reasons explained below, the undersigned **RECOMMENDS** that

---

[1] Effective June 1, 2024, FedEx Ground System, Inc., merged with Federal Express
Corporation, a wholly-owned subsidiary of FedEx Corporation. (*See* D. Br. at 9.)

FedEx's Motion for Summary Judgment (Dkt. No. 47) be **GRANTED** in part and **DENIED** in part.

FedEx's Motion to Strike Valarie Reddick's Declaration (Dkt. No. 53) is **DENIED** as unnecessary.  The proper procedure for contesting summary judgment evidence is to assert an objection to proffered evidence, not to move to strike the evidence.[2]  Accordingly, the undersigned will address the contested evidence in the analysis below.

## I.  BACKGROUND

### A.    Procedural Background.

On May 11, 2023, Rountree filed a pro se complaint alleging wrongful employment practices.  (*See* Dkt. No. 3.)  On July 26, 2023, FedEx filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  (*See* Dkt. No. 17.)  Rountree obtained counsel as of August 11, 2023.  (*See* Dkt. No. 18.)  On September 11, 2023, Rountree filed an amended complaint with jury demand (Dkt. No. 21), to which FedEx filed an answer on September 22, 2023 (Dkt. No. 24).  FedEx's 12(b)(6) motion to dismiss was subsequently denied as moot. (*See* Dkt. No. 32.)

On November 15, 2024, FedEx filed the present motion for summary judgment (Dkt. No. 47), along with a brief in support (Dkt. No. 48) ("D. Br.") and

---

[2] *See Cutting Underwater Techs. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 515 (5th Cir. 2012)) ("Under the now-applicable Rule 56(c)(2) . . . it is no longer necessary for a party to file [a motion to strike]; instead, the party may simply object to the material.").

appendix in support (Dkt. No. 49) ("D. App.").  On December 4, 2024, Rountree

filed a response (Dkt. No. 50), along with a brief in support (Dkt. No. 51) ("P. Br.")

and an appendix in support (Dkt. No. 52) ("P. App.").  On December 18, 2024,

FedEx filed a reply.  (*See* Dkt. No. 54 ("Reply").)  Accordingly, the motion (Dkt.

No. 47) is ripe and ready for determination.  Rountree's amended complaint (Dkt.

No 21) ("Compl.") is the operative complaint in this action.

    FedEx submits the following evidence in support of summary judgment:

- Exhibit 1, Excerpts from the Deposition of Darrius Lacey (D. App. 001-011) ("Lacey Depo.");

- Exhibit 2, Excerpts from the Deposition of Plaintiff Rountree (D. App. 012-063) ("Rountree Depo.");

- Exhibit 3, Excerpts from the Deposition of Austin Hunsaker[3] (D. App. 064- 097) ("Hunsaker Depo.");

- Exhibit 4, Declaration of Andrea Perry-Thaxter, (D. App. 098-103) ("Perry-Thaxter Decl."), including Exhibit A (D. App. 104-197), Exhibit B (D. App. 198-234, Exhibit C (D. App. 235-245), Exhibit D (D. App. 246-248), Exhibit E (D. App. 249-251), Exhibit F (D. App. 252-255);

- Exhibit 5, Signed Employee Handbook Acknowledgement. (D. App. 256-257);

- Exhibit 6, Copy of EEOC Charge of Discrimination (D. App. 258-260); and

- Exhibit 7, Copy of EEOC Right to Sue Letter and case log (D. App. 261-282).

(*See* Dkt. 49.)

---

[3] Hunsaker, an HR Manager for FedEx's Dallas facility, testified as FedEx's Corporate Representative.  (*See* D. App. 067 (Hunsaker Depo. 10:19-20).)

Rountree submits the following evidence in opposition to summary judgment:

- Exhibit A, Declaration of Jayme Rountree ("Rountree Decl.") (P. App. 3-8);

- Exhibit B, Excerpts from the Deposition of Austin Hunsaker ("Hunsaker Depo.") (P. App. 9-62);

- Exhibit C, Excerpts from the Deposition of Darrius Lacey ("Lacey Depo.") (P. App. 63-73) with accompanying exhibits (P. App. 74-79); and

- Exhibit D, Declaration of Valarie Reddick ("Reddick Decl.") (P. App. 80-81).

(*See* Dkt. No. 52.)[4]

All evidence presented is cited to the corresponding D. App. or P. App. page number(s). Deposition testimony is additionally cited to the corresponding deposition transcript page number(s) and line number(s).

**B.    Factual Background.**

This lawsuit centers around statements allegedly made in the workplace, which form the basis of Rountree's sexual harassment and retaliation claims against FedEx. (*See* Compl. ¶¶ 6, 13-21.)

**1. Rountree's Employment at FedEx**

On or about September 30, 2022, Rountree began working as a part-time Package Handler at FedEx's Dallas facility. (*See* Compl. ¶ 6; *see also* D. Br. ¶ 8; P.

---

[4] The undersigned notes that the exhibits as described on the first page of Rountree's Appendix are incorrectly identified. (*See* Dkt. No. 52 at ECF p. 1.) Exhibit B is incorrectly identified as Excerpts from the Deposition of Darius Lacey, and Exhibit C is incorrectly identified as Excerpts from the Deposition of FedEx's Corporate Representative Austin Hunsaker. (*See id.*)

App. 4 ¶ 1 (Rountree Decl.); P. App. 67 (Lacey Depo. 10:5-10:8).)  Rountree worked

from 4:30 p.m. to sunrise.  (*See* D. Br. ¶ 8.)  Package Handlers are trained to load

and unload packages from trailers and assigned to a specific bay via a smartphone

application.[5]  (*See* D. App. 062-063 (Rountree Depo. 203:18-23; 204:2-3).)

Rountree's immediate supervisor was Aaron Thomas, also known as "Big A."  (*See*

P. App. 66-67 (Lacey Depo. 9:13-9:17; 10:9-10:10); *see also* D. App. 100 ¶ 6 (Perry-

Thaxter Decl.).)  Thomas was an Operations Supervisor, who was supervised by an

Area Manager who, in turn, was supervised by Darrius Lacey, who was a Sort

Manager.  (*See* P. App. 65-66 (Lacey Depo. 8:4-8:12; 8:22-9:12).)  Operations

Managers[6] direct Package Handlers' tasks in their bays.  (*See* D. App. 005-006 (Lacey

Depo. 14:15-15:16).)

### 2.  Rountree's Sexual Harassment Allegations

Rountree alleges that Thomas began making "sexually inappropriate"

comments within days of Rountree beginning work for FedEx.  (*See* P. Br. ¶ 7; P.

App. 4 ¶ 2 (Rountree Decl.); P. App. 81 ¶ 4 (Reddick Decl.).)  According to

Rountree, Thomas made these comments "on a near-daily basis" and "made no

secret of his sexual interest in [Rountree]."  (*See* P. Br. ¶ 7; P. App. 4 ¶ 2 (Rountree

---

[5] According to FedEx, its Dallas Warehouse has three primary load wings.  The A-Wing and the B-Wing are unloading areas, and the C-Wing is the loading area.  (*See* D. App 85-86, 87 (Hunsaker Depo. 102:21-103:7; 105:8-24).)  All Package Handlers are trained to load and unload packages; no area is deemed a "heavy lifting area"; and whether wings have heavy packages changes by the hour.  (*See id*.)

[6] Operations Managers were formerly called Operations Supervisors, but they are the same job.  (*See* D. App. 88-89 (Hunsaker Depo. 108:24-109:6).)

Decl.).)  Specifically, Thomas stated that Rountree had a "bubble butt," a "fat ass,"
and was a "wide load."  (*See* P. Br. ¶ 8; P. App. 4 ¶ 3 (Rountree Decl.); P. App. 81
¶ 4 (Reddick Decl.).)   Rountree states that on one occasion, Thomas told her to
"give me the pussy one time and you'll never have to get on a truck again," and on
another occasion, requested that Rountree have sex with him.  (*See* P. Br. ¶ 8; P.
App. 4 ¶ 3 (Rountree Decl.).)  Rountree testified that she never told Thomas that his
words were inappropriate (D. App. 26 (Rountree Depo. 136:3-5)), but she had
mentioned Thomas's behavior to several coworkers, including "J.P.," "Alfrica," and
"L. Hill" (*id*. at 28-29 (Rountree Depo. 138:2-139:5)).  Rountree also testified that
Lacey and Reddick had witnessed the inappropriate comments.  (*Id*. at 32 (Rountree
Depo. 147:4-8).)

    Rountree also alleges that during work hours Thomas would remind her that it
was within his discretion to determine whether or not she was put on the schedule,
and he also called her twice on her days off, again reminding her that he had the
power to keep her on the schedule.  (*See* D. App. 26-27 (Rountree Depo. 136:6-
137:25).)  Rountree testified that she understood Thomas's comments to mean that if
Rountree wanted to be put on the schedule to work, she had to comply with
Thomas's behavior.  (*See id*.)  Rountree testified that she told co-worker Alfrica that
Thomas called Rountree on her day off to tell her that he had the power to keep the
package handlers on the schedule and asked Alfrica if that was true, to which Alfrica
responded "no."  (D. App. 28 (Rountree Depo. 138:10-15).)  Rountree did not tell
Alfrica about Thomas's comments about her body.  (*Id*. at 138:16-19.)

Rountree further states that Thomas told her he would help her obtain a management position and invited her to come to work on Sunday, her day off, to train for a management position. (*See* P. Br. ¶¶ 15-16; P. App. 5 ¶ 9 (Rountree Decl.); P. App. 81-82 ¶ 7 (Reddick Decl.).)  On the day before the scheduled training session, Rountree went to work to view and apply for any open positions, but "the Human Resources representative informed [her] that Fedex had a hiring freeze in place, so there were no promotional opportunities available."[7] (*See* P. Br. ¶ 17; P. App. 5 ¶ 9 (Rountree Decl.); P. App. 81-82 ¶ 7 (Reddick Decl.); P. App. 70 (Lacey Depo. 24:22-24:24).)

Hunsaker testified that when Lacey saw Rountree shadowing Thomas, Lacey informed Thomas that "all positions are frozen [, and] we don't do shadowing," after which Lacey "asked [ ] Rountree to go back to her work area."  (P. App. 59-60 (Hunsaker Depo. 113:9-114:12).)  According to Hunsaker's testimony, Thomas "was unaware that he shouldn't be doing any type of formal shadowing," but he understood this after he received "verbal coaching" from Lacey.  (*See id.*)  Hunsaker also testified that there were no management positions for which Thomas would have been authorized to train Rountree.  (*See* P. App. 58 (Hunsaker Depo. 111:3-24).)

---

[7] This incident apparently occurred in February 2023, but the precise date is unclear. (*See* P. App. 77 (Lacey Depo. Ex. 1).)  It is also unclear as to whether Rountree came in to search for open management positions on a Saturday or a Tuesday.  (*Compare* P. App. 5 ¶ 9 (Rountree Decl.) *with* D. App. 238 (Investigation Report).)  In any case, the fact that these events occurred sometime in February 2023 is undisputed.

7

### 3. FedEx's Investigation of Rountree's Complaint

On or around March 15, 2023, Rountree complained to FedEx's Human Resources ("HR") department about Thomas's sexual comments and his promise to train her for promotion to a management position.  (P. App. 55, 58 (Hunsaker Depo. 108:14-108:10 & 111:3-24); P. App. 5 ¶ 11 (Rountree Decl.).)  HR representative Andrea Perry-Thaxter investigated Rountree's complaint under the supervision of Hunsaker, who was the "case manager."[8]  (P. App. 11-12 (Hunsaker Depo. 9:6-9:14, 10:2-10:16).)  Perry-Thaxter documented that Rountree's main complaint was that she felt like she was being harassed by Thomas who "played" her by making her think that she was getting a management position because he wanted to have sex with her, and that Thomas told Rountree to "give him the pussy and [she didn't] have to work on the truck."  (D. App. 101 ¶ 16 (Perry-Thaxter Decl.); D. App. 236 (Investigation Report).)

On March 16, 2023, Perry-Thaxter "submitted an Alert Line complaint on Rountree's behalf and began investigating her complaint."  (See D. App. 102 ¶ 11 (Perry-Thaxter Decl.).)[9]  Perry-Thaxter informed Assistant Hub Manager Veronica Hammontree that Thomas needed to be moved to a different area while she

---

[8] Simone Nelson was the HR Business Partner for the Dallas warehouse facility, but Nelson was out during this time due to illness.  (See D. App. 100 ¶ 7 (Perry-Thaxter Decl.); D. App. 35 (Rountree Depo. 150:4-12).)  Perry-Thaxter stated that Nelson informed her that she had no record of any calls from Rountree.  (See D. App. 100 ¶ 7 (Perry-Thaxter Decl.).)

[9] The undersigned notes that some of the paragraphs in Perry-Thaxter's Declaration are numbered incorrectly.  (See D. App. 101-02.)  For example, App. 101 contains paragraphs numbered 16-20, while App. 102 contains paragraphs numbered 11-15.  (See id.)  The undersigned refers to the paragraphs as they are numbered in the document.

investigated Rountree's allegations. (*See* D. App. 100 ¶ 10 (Perry-Thaxter Decl.).)

Hunsaker testified that Thomas was moved out of Rountree's area after FedEx

received her complaint, but Thomas was still working under Hammontree. (P. App.

53-54 (Hunsaker Depo. 101:21-102:4).) Lacey, who supervised Thomas, testified

that he was unaware of Thomas being moved to avoid his working with Rountree

and stated that Operations Managers were moved around all the time. (P. App. 73

(Lacey Depo. 32:11-32:18).)

     Rountree stated she was "not sure what steps Fed[E]x took to investigate [her]

complaint," but she stated that she was asked to provide "telephone records to

confirm [her] allegations about Thomas contacting [her], but she no longer had

access to those records because [she] no longer had that mobile device or carrier."

(P. App. 5 ¶ 12 (Rountree Decl.); *see also* P. App. 25 (Hunsaker Depo. 42:3-42:25).)

Rountree had changed her cell phone number and carrier because she was receiving

harassing calls from the father of her children. (*See* D. App. 14 (Rountree Depo.

20:6-12).) Hunsaker confirmed that during the investigation, FedEx asked Rountree

to provide phone records but did not ask Thomas to provide phone records. (P. App.

36-52 (Hunsaker Depo. 42:25-43:2; 76:7-92:23).)

     During the investigation, Perry-Thaxter interviewed Rountree, Thomas,

Lacey, and Package Handler Markisha Banks, another female employee who

reported to Thomas. (P. App. 16-17, 35 (Hunsaker Depo. 16:9-17:8; 75:10-75:19).)

Perry-Thaxter interviewed Rountree on March 29, 2023, at which time Rountree

repeated her allegation that some time in February 2023, Thomas told her that she

would not have to work on the truck if she had sex with him. (*See* D. App. 238 (Investifation Report).) Rountree stated that there were no witnesses to Thomas's statements. (*Id*.) Rountree also stated that Thomas told her that "he [could] help her train to be an Ops Manager" and "told her to apply for the Ops Manager position in HR and come in the following Sunday with her notebook so that he [could] train her." (*Id*.) Rountree was unable to come in on Sunday but came in the following Tuesday at which time she learned there was no management position available. (*Id*.)

Perry-Thaxter also interviewed Thomas on March 29, 2023. (*See* D. App. 238.) Thomas denied telling Rountree that if she "g[a]ve him the pussy [she didn't] have to work on the truck" and denied ever saying anything inappropriate to Rountree. (*Id*.) Thomas also denied calling Rountree and threatening to fire her if she did not come to work. (*Id*.) Thomas admitted, however, that in February 2023, he told Rountree to come in on a Sunday to "shadow him so that she [could] see what he does;" that she did not come in on Sunday, but came on Tuesday; and that Lacey intervened by telling Rountree to go back to work because he had not given permission for Rountree to shadow Thomas and because there were no Ops Manager positions available. (*Id*.) According to Thomas, when he offered to help Rountree apply for an Ops Manager position, he was not aware of the hiring freeze. (*Id*.)

Perry-Thaxter interviewed Banks on March 30, 2023. (*See* D. App. 236-237 (Investigation Report).) Banks stated she had worked with Thomas since October

2022 and "never had any issues with him." (*Id.* at 237.) Banks also told Perry-Thaxter that she was surprised when Rountree told her that Thomas called her on her day off and told her that if she did not come to work, he was going to fire her. (*Id.*) Banks also stated that Rountree was upset because Thomas called her on her day off and told Banks that she was going to make a report that Thomas sexually harassed her and threatened to terminate her. (*Id.*) Banks further stated that "Rountree never told her that Thomas did or said anything else to her." (*Id.*) However, Banks noted that Rountree told her that "she really wanted to be a manager and was still upset that Thomas 'played' her." (*Id.*)

Next, Perry-Thaxter interviewed Lacey on March 31, 2023. (*See* D. App. 237 (Investigation Report).) Lacey corroborated the February 2023 shadowing incident as reported by Hunsaker, Rountree, and Thomas; however, he stated that "Rountree never reported to him that Thomas said or behaved inappropriately with her." (*Id.*)

Perry-Thaxter completed her investigation of Rountree's complaint on April 4, 2023, determined the complaints were unsubstantiated, and sent a letter to Rountree explaining that the investigation had been concluded and that "action was taken accordingly." (D. App. 101 ¶ 20 (Perry-Thaxter Decl.); D. App. 239; D. App. 250 (April 4, 2023 to Rountree).) According to FedEx, Thomas was counseled based on the investigation's finding that he was not aware there was a hiring freeze in place when he offered to assist Rountree in getting a promotion and inviting her to shadow him. (D. App. 96-97 (Hunsaker Depo. 131:16-132:5).)

### 4. Rountree's Termination

On March 29, 2023, Rountree was assigned to work under a different Operations Manager, Brandon Rogers.  (P. App. 18 (Hunsaker Depo. 24:16-24:24).) Rountree complained that Rogers assigned her to a trailer with items that were too heavy for her to move alone, so she asked other employees to help her.  (D. App. 48 (Rountree Depo. 179:16-21,180:4-9, 17-25); *see also* P. App. 6 ¶ 15 (Rountree Decl.).) According to Rountree, Rogers ignored her attempts to obtain a reassignment.  (*Id.* ¶ 15.)  Rountree believed that "Rogers ignored [her] because [she] complained about Thomas [which] resulted in Thomas being reassigned."  (*Id.* at 15-16; *see also* D. App. 49 (Rountree Depo.180:11-25).)

Because Rountree was unable to unload the truck to which she had been assigned, she "decided to take a break."  (P. App. 6 ¶ 17 (Rountree Decl.).)  As she was leaving for break, Rogers confronted her about clocking out for break and the two argued.  (*See id.*; *see also* D. App. 53 (Rountree Depo.188:2-11, 190:24-25; 191:1-7).)  During the argument, Rogers told Rountree to give him her timecard so he could clock her out for her break, and she refused.  (D. App. 53-55 (Rountree Depo. 188:2-11; 190:24-25; 191:1-7).)  Rountree told Rogers: "You need to go down there and manage your bank area.  I'm going to work under this manager right here.  I came to you several times.  You wanted to continue to put me on heavy trucks.  I'm not dealing with it."  (*Id.* at 55 (Rountree Depo. 191:12-23).)

At some point, Lacey intervened and eventually called Hammontree.  (D. App. 253 (Package Handler Documented Discussion);[10] D. App. 56 (Rountree Depo. 192:3-12).)  Hammontree asked Rountree if she still wanted to work and offered to move Rountree to C Wing, but Rountree refused and demanded to speak to HR.  (*See id.*)  Rountree claimed that the C Wing was a "punishment" because she was not trained to load trailers.[11]  (*Id.* at 61, 200:17-25.)  Rountree told Hammontree that she was not going to work in the C Wing and yelled: she wasn't "going to do that" and "fuck this."  (*Id.* at 59, 197:13-16, 197:24-198:3.)  According to Rountree, Hammontree stated: "I'm not going to keep moving my managers around because of you," to which Rountree responded she would "take it up with the EEOC," which Rountree stated made Hammontree angry.  (*See* P. App. 6-7 ¶¶ 18-19 (Rountree Decl.).)

Rountree states that Hammontree then took her employee badge and walked her to HR.  (*See* P. App. 6-7 ¶¶ 18-19 (Rountree Decl.).)  Rountree admits that she "lost [her] temper and cursed and yelled at Hammontree."  (*See id.* ¶ 20.)  Rountree

---

[10] Perry-Thaxter avers that Hammontree completed the Package Handler Documented Discussion form to document the incident (*see* D. App. 102 ¶ 21 (Perry-Thaxter Decl.)), but the form repeatedly refers to Hammontree in the third person, suggesting that perhaps someone completed the form on Hammontree's behalf (*see* D. App. 253).  In addition, although the incident occurred on March 29, 2023, it appears that Hammontree signed the form several days later, on April 6, 2025.  (*See* D. App. 253).

[11] Although Rountree claimed she was not trained to load trailers, FedEx avers that all Package Handlers are trained to load and unload trailers (*see* D. App. 86 (Hunsaker Depo. 103:4-7); *see also* Compl. ¶ 20), and the evidence indicates that, perhaps, rather than not being trained to load trailers, Rountree disliked loading trailers (D. App. 46, 47 (Rountree Depo. 176:18-24; 178:4-7).)

continued to yell and curse as she was escorted to HR.  (D. App. 253.)  There was no one working in the HR office that day.  (D. Br. at 16 n.61.)  Hammontree told Rountree that she "would be placed on suspension for her belligerent behavior."[12] (*see* D. App. 253; *see also* D. App. 79, 92-93 (Hunsaker Depo. 69:4-13; 125:22-126:4).) Hammontree concluded that Rountree "violated the Acceptable Conduct Policy-010 and will be terminated for misconduct."  (D. App. 253.)

This incident happened around 1:00 a.m. on March 29, 2023, and Hammontree reported the incident to Hunsaker the next morning.  (D. App. 074 (Hunsaker Depo. 25:13-17).)  Hunsaker testified that due to the open investigation regarding Rountree's sexual harassment allegations he "wanted to ensure that that investigation was completed before any type of disciplinary action was taken."  (*Id.* at 25:18-25.)  Once Perry-Thaxter completed the investigation and determined that Rountree's sexual harassment allegations were unsubstantiated, Hunsaker agreed with Hammontree's recommendation to terminate Rountree for misconduct, including Rountree's refusal to take direction from Rogers; her "combative" behavior toward Lacey, Rogers, and Hammontree; her use of foul language toward Hammontree when Hammontree offered to assign her to another work area; continuing to use profanity as Hammontree escorted her to HR and banging on the door to HR; and then giving Hammontree the middle finger and calling her a "fat

---

[12] Hunsaker testified that Rountree was placed on paid suspension, a disciplinary action which was within Hammontree's authority.  (D. App. 075 (Hunsaker Depo. 30:13-18).)

bitch." (*See id*. 19:4-25:25.)  According to Hunsaker, Rountree's termination had nothing to do with her complaint against Thomas.  (D. App. 074 (Hunsaker Depo. 25:23-25).)

### 5.  Rountree's EEOC Charge

Rountree alleges that shortly after she reported her harassment allegations to HR, she filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").  (*See* Compl. ¶ 10.)  Although Rountree submitted an EEOC Inquiry Form on March 14, 2023, it appears that she did not submit a charge of discrimination until later.  (*See* D. App. 279.)  Rountree appears to have submitted two charges of discrimination to the EEOC: Charge No. 450-2023-0488 and Charge No. 450-2023-08813.  (*See* D. App. 264, 281.)  FedEx alleges that it did not receive the EEOC Charge until after Rountree's termination.  (*See* D. Br. at 26.)  The EEOC issued Rountree a notice of right to sue letter with respect to Charge No. 450-2023-0488 on April 24, 2023. (*See* D. App 268 (EEOC Determination of Charge).)

## II.  LEGAL STANDARDS

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).  The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which it believes demonstrate the absence of a genuine issue of

material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Technical Automation Servs. Corp. v. Liberty Surplus Ins. Corp.*, 673 F.3d 399, 407 (5th Cir. 2012); *QBE Ins. Corp. v. Brown & Mitchell, Inc.*, 591 F.3d 439, 442 (5th Cir. 2009).

"A fact is material only if its resolution would affect the outcome of the action." *Wiley v. State Farm Fire & Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009); *accord Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012); *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 454 (5th Cir. 2005).  "Factual disputes that are irrelevant or unnecessary will not be counted.'"  *Tiblier v. Dlabal*, 743 F.3d 1004, 1007 (5th Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "An issue is 'genuine' if it is real and substantial, as opposed to merely formal, pretended, or a sham."  *Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001).  Thus, a genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248; *accord Poole*, 691 F.3d at 627; *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010); *Wiley*, 585 F.3d at 210; *EMCASCO Ins. Co. v. Am. Int'l Specialty Lines Ins. Co.*, 438 F.3d 519, 523 (5th Cir. 2006).  The moving party, however, need not negate the elements of the nonmovant's case.  *See Bayle*, 615 F.3d at 355; *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)); *Millennium Petrochemicals, Inc. v. Brown & Root Holdings, Inc.*, 390 F.3d 336, 339 (5th Cir. 2004).

Once a proper motion has been made, the nonmoving party may not rest upon mere allegations or denials in the pleadings but must present affirmative evidence, setting forth specific facts, to demonstrate the existence of a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 322 n.3 (quoting Fed. R. Civ. P. 56(e)); *Anderson*, 477 U.S. at 256; *Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc.*, 738 F.3d 703, 706 (5th Cir. 2013); Bayle, 615 F.3d at 355; *EMCASCO Ins. Co.*, 438 F.3d at 523. "[T]he court must review the record 'taken as a whole.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); s*ee Riverwood Int'l Corp. v. Emp'rs Ins. of Wausau*, 420 F.3d 378, 382 (5th Cir. 2005). All the evidence must be construed in the light most favorable to the nonmoving party, and the court will not weigh the evidence or evaluate its credibility. *Reeves*, 530 U.S. at 150; *Downhole Navigator, LLC v. Nautilus Ins. Co.*, 686 F.3d 325, 328 (5th Cir. 2012); *EEOC v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 615 (5th Cir. 2009). The evidence of the nonmovant is to be believed, with all justifiable inferences drawn and all reasonable doubts resolved in its favor. *Groh v. Ramirez*, 540 U.S. 551, 562 (2004) (citing *Anderson*, 477 U.S. at 255); *Cotroneo v. Shaw Env't & Infrastructure, Inc.*, 639 F.3d 186, 192 (5th Cir. 2011); *Tradewinds Envtl. Restoration, Inc. v. St. Tammany Park, LLC*, 578 F.3d 255, 258 (5th Cir. 2009). The evidence is construed "'in favor of the nonmoving party, but only where there is an actual controversy, that is, when both parties have submitted evidence of

17

contradictory facts.'" *Spring St. Partners-IV, L.P. v. Lam*, 730 F.3d 427, 435 (5th Cir. 2013) (quoting *Boudreaux*, 402 F.3d at 540).

Furthermore, "only reasonable inferences in favor of the nonmoving party can be drawn from the evidence." *Mills v. Warner-Lambert Co.*, 581 F. Supp. 2d 772, 779 (E.D. Tex. 2008) (citing *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 469 n.14 (1992)); *accord Cannata v. Catholic Diocese of Austin*, 700 F.3d 169, 172 (5th Cir. 2012). "If the [nonmoving party's] theory is . . . senseless, no reasonable jury could find in its favor, and summary judgment should be granted." *Eastman Kodak Co.*, 504 U.S. at 468-69; *accord Shelter Mut. Ins. Co. v. Simmons*, 543 F. Supp. 2d 582, 584-85 (S.D. Miss.), *aff'd*, 293 F. App'x 273 (5th Cir. 2008). The nonmovant's burden is not satisfied by "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,'" by speculation, by the mere existence of some alleged factual dispute, or "by only a 'scintilla' of evidence." *Little*, 37 F.3d at 1075 (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *Matsushita Elec. Indus. Co.*, 475 U.S. at 586; *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994); *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994)); *accord Stauffer v. Gearhart*, 741 F.3d 574, 581 (5th Cir. 2014); *Thibodeaux v. Vamos Oil & Gas Co.*, 487 F.3d 288, 294-95 (5th Cir. 2007). "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003); *accord Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012); *RSR Corp. v.*

18

*Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010); *see Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 332 (5th Cir. 2004).

Summary judgment is mandated if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to its case on which it bears the burden of proof at trial. *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp.*, 477 U.S. at 322; *EMCASCO Ins. Co.*, 438 F.3d at 523; *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 110 (5th Cir. 2005); *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004). "[W]here the nonmoving party fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, no genuine issue of material fact can exist." *Apache Corp. v. W&T Offshore, Inc.*, 626 F.3d 789, 793 (5th Cir. 2010) (internal quotations omitted). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322-23.

### III.  ANALYSIS

Rountree alleges that she was sexually harassed in violation of Title VII. (*See* Compl. ¶ 15.)  Specifically, Rountree alleges that she was subjected to unwanted sexual advances, comments, and attention from her supervisor, Aaron Thomas, and that no remedial action was taken when she complained to HR about it. (*See id*. ¶¶ 16, 17.)  Rountree also alleges that she was made to work harder jobs in worse

conditions and was ultimately terminated in retaliation for reporting the alleged sexual harassment in violation of Title VII.  (*See id*. ¶ 20.)

For the reasons discussed below, the undersigned concludes that FedEx is entitled to summary judgment as a matter of law on Rountree's sexual harassment claim, but FedEx has not established that it is entitled to summary judgment on Rountree's retaliation claim.

## A.    Evidentiary Objections

Both parties have lodged objections to certain items of evidence proffered by the opposing party.  Rule 56(c)(2) provides that a party may object to material cited to support or dispute a fact if the material cannot be presented in a form that would be admissible in evidence.  Fed. R. Civ. P. 56(c)(2).  As noted above, FedEx objected to the Declaration of Valarie Reddick, which was included in Rountree's appendix in opposition to FedEx's motion for summary judgment.  (*See* D. App. 81-82) (the "Reddick Declaration").)  Additionally, in her response, Rountree objected to alleged hearsay statements contained in the Declaration of Andrea Perry-Thaxter (D. App. 098-103), as well as in Exhibit C (D. App. 235-245) and Exhibit F (D. App. 252-255) attached thereto.  (*See* P. Br. at 5.)  Finally, in its reply, FedEx objected to certain information contained in Rountree's Declaration (P. App. 3-8, Rountree Decl.).  (*See* Reply at 6-7.)  The undersigned will consider each of these Rule 56(c)(2) objections in turn.

**1. FedEx's Objection to the Declaration of Valerie Reddick**

The Reddick Declaration, dated June 13, 2024, attests that Reddick is a former coworker of Rountree and states that Reddick heard Thomas "[o]n multiple occasions" telling [Rountree] she "had a 'bubble butt,' [ ] a 'fat ass,' and was a 'wide load." (*See* Dkt. No. 52 at 81.) Reddick also claims to have "heard Thomas ask Rountree if he could have sex with her." (*Id.*)

FedEx requests that the Court strike Reddick's Declaration and prohibit: (1) Rountree from relying on Reddick's Declaration in any court filings, and (2) Reddick from serving as a witness or providing testimony at trial. (*See* Dkt. No. 53 at 3.) Alternatively, FedEx requests to reopen discovery for the sole purpose of deposing Reddick, and, in the event that Reddick again avoids service, requests the Court to strike or exclude Reddick's Declaration from further consideration this lawsuit, and strike her as a witness. (*See* Dkt. No. 58.)

FedEx acknowledges that Rountree first produced the Reddick Declaration on June 14, 2024, and thereafter, "[b]ased on the critical nature of Reddick's claims, it sought to take Reddick's deposition." (*See* Dkt. No. 53 at 2.) At that time, discovery remained open until July 23, 2024. (*See* Dkt. No. 29.) On July 9, 2024, the parties filed a Joint Motion to Modify Scheduling Order (Dkt. No. 34) (the "July 9 Joint Motion"), requesting a 30-day extension of the discovery and dispositive motions deadlines, which the Court granted the next day, extending the discovery deadline to August 22, 2024, and the dispositive motions deadline to September 23, 2024 (*see* Dkt. No. 35). The July 9 Joint Motion specifically stated that "Defendant now

21

wishes to take the deposition of Valarie Reddick, which has been subjected to the same scheduling conflicts." (*See* Dkt. No. 34.)   Thereafter, it appears that the parties unsuccessfully attempted to schedule Reddick's deposition.  (*See* Dkt. No. 58-1 (email communications dated July 3, July 8, and July 17, 2024, regarding the parties' attempts to schedule Reddick's deposition).)  In an email dated August 5, 2024, Rountree's counsel informed FedEx's counsel: "I am free Aug. 19, 21, 22, 20, or 30. I have not been able to get in touch with Ms. Reddick to determine her availability. You will probably just need to pick one of those dates and subpoena her."   (*See* Dkt. No. 58-2.)

Then, on August 19, 2024, the parties filed a second joint motion to extend the discovery deadline, this time seeking an extension of the discovery deadline to September 30, 2024 (Dkt. 36) (the "August 19 Joint Motion"), in response to which the Court extended the discovery deadline to September 20, 2024 (instead of September 30, 2025, as requested in the motion), and the dispositive motions deadline to November 15, 2024 (*see* Dkt. No. 39).  The reason for continuance stated in the August 19 Joint Motion was to reschedule Defendant's corporate deposition, as well as to schedule Reddick's deposition.  (*See* Dkt. No. 36 at 2).  With respect to Reddick, the August 19 Joint Motion states: "Defendant has been unable to reach Ms. Reddick in order to schedule her deposition and, therefore, must compel her appearance via subpoena." (*See id.*)

After some back and forth regarding deposition logistics,[13] the parties agreed to schedule Reddick's deposition for September 18, 2024, in the Law Offices of Fisher & Phillips LLP, in Houston, and FedEx issued a subpoena to Reddick on August 29, 2024. (*See* Dkt. Nos. 53-4, 58-4.)  Thereafter, FedEx made multiple attempts to serve Reddick:  On August 31, September 7, September 14, and twice on September 16, 2024. (*See* Dkt. No. 58 at 2; Dkt. 58-5.)  The process server left her contact information each time, but Reddick never contacted the process server. (*Id.*)  On September 7, 2024, Wilma Reddick, who identified herself as Valarie Reddick's mother answered the door, took the process server's information, and said that she would have Reddick contact the process server. (*Id.*)  Again, Reddick did not contact the process server. (*Id.*)  On September 16, 2024, the process server left the subpoena with Wilma Reddick. (*See* Dkt. No. 53-2.)

FedEx argues that Rule 37(d) empowers the Court to issue sanctions against Rountree for Reddick's failure to appear for what FedEx argues was a properly noticed deposition. (*See* Dkt. No. 53 at 3 (citing Fed. R. Civ. P. 37(d)(3).)  Contrary to FedEx's argument, however, Rule 37 is inapplicable here, as Rule 37's remedies are available only against parties; nonparties are instead subject to Rule 45 subpoenas. *Cloud v. Cumulus Media New Holdings, Inc.*, No. 3:22-CV-1673-N, 2023

---

[13] Because FedEx was concerned that Reddick would not appear for a deposition, even if served with a subpoena, it sought to conduct Reddick's deposition via Zoom. (*See* Dkt. No. 58-3 at 1.)  However, there was difficulty coordinating the logistics of Reddick's deposition with FedEx's corporate deposition, and Rountree's counsel insisted that either both depositions occur in person, or both occur remotely. (*See* Dkt. 58-4 at 1-2).

23

WL 2700722, at *1 (N.D. Tex. Mar. 29, 2023) (citing *Francois v. Blandford*, No. CIV.A.10-1330, 2012 WL 777273, at *1 (E.D. La. Mar. 7, 2012) ("Rule 37 simply does not provide a remedy for the failure of a non-party witness to appear at a deposition."); *MetroPCS v. Thomas*, 327 F.R.D. 600, 614–15 (N.D. Tex. 2018) ("[N]either [the] general provision [of Rule 37(a)(1)] nor any specific provision elsewhere in Rule 37 or 45, [ ] authorizes a motion to require a non-party to appear for a deposition.") (quoting *Traut v. Quantum Serv., LLC*, No. 3:18-MC-14-D-BN, 2018 WL 1035134, at *8 (N.D. Tex. 2018)) (internal quotation marks omitted).)

A subpoena under Rule 45 is properly served when it is delivered to the person named in the subpoena, along with the fees for one day's attendance and mileage. Fed. R. Civ. P. 45(b)(1). FedEx contends that "the process server conducted domiciliary service" (*see* Dkt. No. 58 at 3), but in the Fifth Circuit, proper delivery requires personal delivery of the subpoena (not domiciliary service on anyone at the person's home). *See In re Dennis*, 330 F.3d 696, 704 (5th Cir. 2003) (stating Rule 45 "indicates that proper service requires . . . personal delivery of the subpoena"); *Bradley v. Keymarket of New Orleans, Inc.*, 26 F.3d 1119 (5th Cir. 1994) (upholding district court decision to quash subpoenas because record showed that employees were not personally served) (citing Fed. R. Civ. P. 45(b)(1); Wright & Miller, 91 Fed. Pac. & Proc. Civ. § 2454 (3d ed. 2013)); *see also Ott v. City of Milwaukee*, 682 F.3d 552, 557 (7th Cir. 2012) (noting that Fifth Circuit has interpreted the language of Rule 45 "literally to require nothing short of personal service"); *Boze Mem'l, Inc. v. Travelers Lloyds Ins. Co.*, No. 3:12-cv-669-P, 2013 WL 5299278, at *4 (N.D. Tex. Sept. 20,

24

2013) (noting that until the technical requirements of Rule 45(b)(1) are satisfied the court cannot force a party's compliance with a subpoena); *Lexington Ins. Co. v. Harvia Oy*, No. 4:13-CV-713-O, 2013 WL 12330197, at *1 (N.D. Tex. Nov. 14, 2013) ("The fact that [a nonparty] has made the required personal service 'difficult to accomplish' does not grant the district court the authority to waive the requirements of Rule 45(b) (citing *Nunn v. State Farm Mut. Auto. Ins. Co.*, No. 3:08-CV-1486-D, 2010 WL 4258859, at *1 (N.D. Tex. Oct. 21, 2010). Here, despite FedEx's multiple attempts to serve Reddick, a notice of subpoena was not properly served pursuant to Rule 45(b)(1).

FedEx also maintains that sanctions are warranted because Reddick refused to be deposed (*see* Dkt. No. 58 at 6), but this is incorrect. Rather, it appears more likely that Reddick was not agreeable to being served. (*See* Dkt. No. 58 at 2; Dkt. 58-5.) The fact that Reddick made personal service "difficult to accomplish," however, does not waive the requirement for personal delivery of the subpoena. *Lexington Ins. Co.*, 2013 WL 12330197, at *1; *Nunn*, 2010 WL 4258859, at *1. Furthermore, the cases FedEx cites to support its argument are not only inapposite, but they are from other jurisdictions, and therefore not binding on this Court. (*See* Reply at 6, n. 30 (citing *Long v. CPI Sec. Sys., Inc.*, No. 3:12-CV-396-RJC-DSC, 2013 WL 2154808, at *1 (W.D.N.C. May 17, 2013) (granting defendant's motion to strike declarations of two opt-in plaintiffs who refused to be deposed); *Shoes by Firebug LLC v. Stride Rite Children's Grp., LLC*, 962 F.3d 1362, 1372-73 (Fed. Cir. 2020) (finding no error by

U.S. Patent and Trademark Office Patent Trial and Appeal Board, which struck a declaration of a witness who refused to be deposed); *Evans v. IAC/Interactive Corp.*, 244 F.R.D. 568, 578 n.8 (C.D. Cal. 2007) (striking declarations of witnesses who refused to be deposed).

FedEx also contends that sanctions are warranted under Rule 30(d)(2), apparently based on its contention that Rountree was at fault because her counsel failed to secure Reddick's deposition and unfairly misled FedEx that they would produce Reddick for deposition. (*See* Dkt. No 53 at 2-3.) Under Rule 30(d)(2), "[t]he Court may impose an appropriate sanction . . . on a person who impedes, delays, or frustrates the fair examination of the deponent." Fed. R. Civ. P. 30(d)(2) FedEx (*See* Dkt. No. 53 at 2-3.) The record, however, does not support FedEx's position that Rountree's counsel delayed or frustrated the taking of Reddick's deposition. Accordingly, the undersigned finds that sanctions on this basis are not warranted.

Next, the undersigned must consider whether the Reddick Declaration qualifies as admissible evidence. Federal Rule of Civil Procedure 56 allows a party to submit declarations to support or oppose a motion for summary judgment. *See* Fed. R. Civ. P. 56(c)(1)(A); *see also* 28 U.S.C. § 1746 (allowing unsworn declarations to be submitted under penalty of perjury). But those declarations "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

Federal Rule of Evidence 602 requires a witness to introduce evidence "sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. "Evidence to prove personal knowledge may consist of the witness's own testimony." *Id*. "'Personal knowledge can include inferences and opinions, so long as they are grounded in personal observation and experience.'" *United States v. Evans*, 892 F.3d 692, 715 (5th Cir. 2018) *(*quoting *United States v. Cantu*, 167 F.3d 198, 204 (5th Cir. 1999)), *as revised* (July 6, 2018). And trial courts have "some discretion" in evaluating "an initial showing [of a witness's personal knowledge], and generally [do] not abuse that discretion by accepting as provisionally adequate [a] witness' testimony that he has personal knowledge." *United States v. Davis*, 792 F.2d 1299, 1304 (5th Cir. 1986).

Here, Reddick states that she is competent to make the declaration; that she was a package handler at FedEx from 2016 to 2023 and often worked the same shifts as Rountree; and that Lacey was her manager and Thomas was Rountree's manager. (*See* P. App. 81 ¶ 1-3.) Accordingly, there is nothing to suggest that Reddick likely did not have or could not have had personal knowledge—at least as to some of the statements in her declaration. *See Davis*, 792 F.2d at 1304. Then Reddick states:

> On multiple occasions, I heard Thomas tell Rountree that she had a 'bubble butt,' had a "fat ass," and was a "wide load.' I also heard Thomas ask Rountree if he could have sex with her.

(*See* P. App. 81 ¶ 4.) Reddick also states:

> On another occasion, Rountree and I approached [Lacey] to inquire about the potential for moving to a management role. Lacey explained what is required to move to a management role. He then called to

27

Thomas, "Hey, Big A, your employee is over here asking about a management position," or words to that effect.

(*See* P. App. 81 ¶ 6.)   These statements sufficiently establish that Reddick had personal knowledge of the facts asserted in these two paragraphs of her declaration. *See* Fed. R. Evid. 602; *see also Evans*, 892 F.3d at 715; *Davis*, 792 F.2d at 1304. Reddick's statement that Rountree "did not appear to be happy or pleased" when Thomas made these comments and "did not encourage [him] to continue making these comments" (*see* P. App. 81 ¶ 5) also qualifies as personal knowledge.  *See Evans*, 892 F.3d at 715 ("Personal knowledge can include inferences and opinions, so long as they are grounded in personal observation and experience.") (internal citations and quotation marks omitted).

 Because the statements in these paragraphs indicate that Reddick had personal knowledge of material facts that are in dispute, the undersigned concludes that Paragraphs 1 through 6 of the Reddick Declaration are competent summary judgment evidence and will consider these statements for purposes of this summary judgment opinion.  FedEx's objections are therefore **OVERRULED** as to these paragraphs.

Paragraph 7, however, is not competent summary judgment evidence because the statements contained therein consist of hearsay, general conclusions, and speculation.  *See Okoye v. Univ. of Tex. Houston Health Sci. Center*, 245 F.3d 507, 510 n.5 (5th Cir. 2001) ("Because these statements are hearsay, they are not competent summary judgment evidence."); *see also Walker v. SBC Servs., Inc.*, 375 F. Supp. 2d

524, 535 (N.D. Tex. 2005) ("Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence.").  The Federal Rules of Evidence define hearsay as a statement that "the declarant does not make while testifying at the current trial or hearing" that "a party offers in evidence to prove the truth of the matter asserted in the statement."  *Smith v. Palafox*, 728 F. App'x 270, 276 (5th Cir. 2018) (citing Fed. R. Evid. 801(c)).  The statements in Paragraph 7 consist of statements that Rountree allegedly made to Reddick regarding statements Thomas allegedly made to Rountree (double hearsay), and Reddick's speculation about the meaning of "what Rountree discovered" regarding the availability of promotional opportunities.  (*See* P. App. 82 ¶ 7.)  Accordingly, the undersigned will not consider these statements, and FedEx's objection is sustained as to Paragraph 7.  *See Akin v. Q–L Invs., Inc.*, 959 F.2d 521, 531 (5th Cir. 1992) ("On a motion for summary judgment, the district court should disregard only those portions of an affidavit that are inadequate and consider the rest.").

To the extent FedEx contends that Reddick's testimony is "untested" because she has not been deposed, or "self-serving" because of alleged biased in favor of Rountree (*see* Dkt. No. 53), this goes to the credibility of Reddick's statements, not their admissibility.  When reviewing the evidence on a motion for summary judgment, the court must decide all reasonable doubts and inferences in the light most favorable to the non-movant.  *See Baylor Cnty. Hosp. Dist. v. Burwell*, 163 F. Supp. 3d 372, 377 (N.D. Tex. 2016) (citing *Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir.1988), *aff'd sub nom. Baylor Cnty. Hosp. Dist. v. Price*, 850 F.3d 257

(5th Cir. 2017).  "The Court cannot make a credibility determination in light of conflicting evidence or competing inferences."  *See Baylor Cty. Hosp. Dist.*, 163 F. Supp. 3d at 377 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Furthermore, "self-serving testimony does not mean it cannot create an issue of fact."  *Weathered v. Fam. Dollar Stores of Texas LLC*, No. 3:22-CV-2409-K-BN, 2023 WL 8628929, at *7 (N.D. Tex. Nov. 27, 2023) (citing *Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 160-61 (5th Cir. 2021)), *adopted*, 2023 WL 8627816 (N.D. Tex. Dec. 13, 2023).  "How much weight to credit self-interested evidence is a question of credibility, which judges may not evaluate at the summary judgment stage." *Guzman*, 18 F.4th 157, 160-61; *see also Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

Similarly, any alleged bias does not render Reddick's testimony inadmissible. *See United States v. Ewell*, 252 F. Supp. 2d 104, 115 (D.N.J. 2003) ("Questions of bias go to the credibility and weight of the evidence rather than . . . admissibility."); *see also Dunigan v. Mississippi Valley State Univ.*, No. 4:19-CV-33-DMB-JMV, 2020 WL 9606765, at *4 (N.D. Miss. Oct. 16, 2020).  And as to FedEx's doubts regarding whether Reddick "will even show up to testify at trial" (see Dkt. No. 53 at 1), this too goes to credibility of the testimony, which ultimately will be determined by a factfinder.  Accordingly, FedEx's remaining objections to the Reddick Declaration are **OVERRULED**.

## 2. Rountree's Objection to Perry-Thaxter's Declaration

Rountree objected that Perry-Thaxter's Declaration is "rife with hearsay statements" and argued that statements Perry-Thaxter collected during her investigation of Rountree's sexual harassment complaint about Thomas are inadmissible if offered to prove the truth of the matter asserted. (*See* Dkt. No. 51 at 5-6.) Specifically, Rountree challenges the following statements in Perry-Thaxter's Declaration:

- Nelson informed me that she had no record of any calls from Rountree. (D. App. 100 ¶ 7.)

- Thomas denied the harassment allegations and informed me that Rountree asked him for help to become an Operations Manager, and he agreed to help her by inviting her to job shadow him[;] Thomas admitted that he was unaware of the hiring freeze in place and did not know that there were no management positions available at that time. (D. App. 102 ¶ 14.)

- Lacey informed [Thomas and Rountree] there was a hiring freeze in place and that there were no management positions available. (D. App. 102 ¶ 15.)

- Rountree told Banks that she was going to report Thomas to HR that he sexually harassed her and terminated her [and] Rountree also informed Banks that she really wanted to be a manager and was upset that Thomas had "played her." (D. App. 101 ¶ 16.)

Rountree further argues that Exhibit C, Investigation Report (D. App. 236-245), and Exhibit F, Documented Package Handler Discussion (D. App. 252-255), attached to Perry-Thaxter's Declaration are inadmissible because FedEx "made no effort to authenticate these reports or otherwise establish" that they qualify as business records for purposes of Fed. R. Evid. 803(6), and even if the Court

determined that these records fall within the business records exception, the out-of-court statements by others contained in these records are also inadmissible hearsay for which no exception has been presented. (*See* Dkt. No. 51 at 6.)

The statements in Perry-Thaxter's Declaration (D. App. 99-103)—as well as the statements contemporaneously recorded in Perry-Thaxter's Investigation Report (D. App. 235-245)—are not inadmissible hearsay because the statements were not offered to prove the truth of the matter asserted. Instead, the statements were offered to prove what the employees told Perry-Thaxter during her investigation and to show the information relied upon by Perry-Thaxter when she determined that she could not substantiate Rountree's sexual harassment allegations against Thomas. *See Brauninger v. Motes*, 260 F. App'x 634, 636–37 (5th Cir. 2007).

In *Brauninger*, the plaintiff's employer investigated allegations of sexual harassment by plaintiff's coworkers against plaintiff. *See Brauninger*, 260 F. App'x at 636–37. The investigation included interviews of the plaintiff's coworkers, statements made by the plaintiff's coworkers, and complaints received by the human resource department, and it was summarized by two human resource employees in reports. *Id.* at 636. On appeal, the Fifth Circuit held that the district court correctly ruled that the "reports were made at or near the time of the investigations, were based on [the human resource director's] personal knowledge of their own investigations, and [they] were the result of a regularly conducted business activity." *Id.* at 637. Additionally, the Fifth Circuit opined that the district court "properly noted that the investigation and documentation of sexual harassment allegations are

32

ordinary business practices and regular parts of [the human resource director's] duties." *Id.*; Fed. R. Evid. 803(6). Fed. R. Evid. 803(6) allows admission of reports that are made at or near the time of the event by a person with knowledge of the information if the records are made as a regular practice of that activity and are kept in the course of a regularly conducted activity of the business. *Id.*; Fed. R. Evid. 803(6)(A)-(C). Also, the above conditions must be certified by the custodian or another qualified witness. *Coleman v. Jason Pharms.*, 540 F. App'x 302, 306 (5th Cir. 2013); Fed. R. Evid. 803(6)(D).

Perry-Thaxter's Declaration avers that she is a "Senior Resources Business Partner" for FedEx, responsible for (among other things) assisting with policy violations and investigations; she conducted an investigation of Rountree's complaint during which she interviewed Rountree, Thomas, Lacey, and Banks; she documented those interviews in an Investigation Report; and after her investigation, she determined that Rountree's complaints were unsubstantiated. (*See* D. App. 99-103 ¶¶ 1, 10, 13, 20 (Perry-Thaxter Decl.).) Accordingly, as in *Brauninger*, Perry-Thaxter conducted the investigation and documentation of Rountree's harassment claims as an ordinary business practice in the course of her duties as a Senior Human Resources Business Partner. Perry Thaxter's Declaration also provides that the statements in the Investigation Report were made with her personal knowledge and around the time of the investigation. Therefore, Rountree has failed to show that Perry Thaxter's Declaration (D. App. 099-103) and the challenged Exhibit C,

Investigation Report (D. App. 235-245) are inadmissible, and her objections as to this evidence are **OVERRULED**.

Perry-Thaxter's statement regarding Exhibit F, Documented Package Handler Discussion, compels a similar conclusion but for different reasons. (*See* D. App. 103 ¶ 21 (Perry Thaxter Decl.).) Perry-Thaxter merely avers that Hammontree completed the form "to document the incident that occurred on March 29, 2023." There are no statements to establish Perry-Thaxter's personal involvement in the incident, or to establish that she investigated the incident, or had any personal knowledge at or near the time the form was completed to document the incident. Nonetheless, Rule 56(c)(2) provides that a party may object to summary judgment evidence if the cited material "*cannot be presented* in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2) (emphasis added). "At the summary judgment stage, evidence need not be authenticated or otherwise presented in an admissible form." *See* Fed. R. Civ. P. 56(c); *Maurer v. Independence Town*, 870 F.3d 380, 384 (5th Cir. 2017); *Lee v. Offshore Logistical & Transport, L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017); *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016). "[M]aterials cited to support or dispute a fact need only be capable of being 'presented in a form that would be admissible in evidence.'" *LSR Consulting, LLC*, 835 F.3d at 534 (quoting Fed. R. Civ. P. 56(c)(2)).

In this case, it is likely that FedEx's witnesses can properly authenticate the Documented Package Handler Discussion and testify as to its contents at trial. Therefore, Rountree has not shown that the Documented Package Handler

Discussion at issue is incapable of being presented in a form that would be admissible at trial. *Ware v. Autozoners, LLC*, No. H-21-67, 2022 WL 2193394, at *6 (S.D. Tex. June 17, 2022) (citing *Gamel v. Forum Energy Technologies, Inc.*, No. H-19-2604, 2021 WL 3556639, at *1 n.4 (S.D. Tex. Aug. 11, 2021), *aff'd*, No. 21-20479, 2022 WL 1551835 (5th Cir. May 17, 2022) (unpublished)). FedEx's objection to this evidence is therefore **OVERRULED**.

### 3. FedEx's Objection to Rountree's Declaration

In its reply brief, FedEx objects to paragraphs 16 and 20 of Rountree's Declaration. (*See* Reply at 5-7.) In paragraph 16, Rountree attested that Rogers ignored her when she tried to ask for help unloading heavier items, and that she "believe[d] Rogers ignored me because [she] complained about Thomas and that resulted in Thomas being reassigned." (P. App. 6, Rountree Decl. ¶ 16.) In Paragraph 20, Rountree attested that "it was clear Hammontree intended to discipline [her] for mentioning the EEOC instead of recognizing [her] statement as a complaint that [she] was being retaliated against," and that she was "suspended without pay." (*Id.* ¶ 20.) FedEx argues that these statements should be disregarded as incompetent summary judgment evidence because Rountree had no personal knowledge, instead relying only on her speculative beliefs to support her statements. (*See* Reply at 6-7.)

Contrary to FedEx's argument, the objected-to statements contain reasonable inferences and perceptions based on Rountree's personal knowledge. *See* Fed. R. Evid. 602 "(Evidence to prove personal knowledge may consist of the witness's own

testimony."); *Evans*, 892 F.3d at 715 ("Personal knowledge can include inferences
and opinions, so long as they are grounded in personal observation and experience."
(internal citations and quotation marks omitted)).  And as noted previously, trial
courts have "some discretion" and generally do not abuse their discretion by
accepting testimony a witness has personal knowledge as "provisionally adequate."
*Davis*, 792 F.2d at 1304.  That is particularly true "when other evidence indicates that
the witness had a personal connection to the subject matter, [and] there is nothing to
suggest that the witness likely did not have or could not have had such knowledge."
*Id.*

FedEx contends that, based on Rountree's testimony that she never discussed
Thomas's behavior with Rogers and that she was not present at managers' meetings
wherein she speculated she was made out to be the "bad guy," she had no personal
knowledge regarding why Rogers ignored her requests for help.  (*See* Reply at 5
(citing D. App. 43-44, 52 (Rountree Depo. 173:9-174:2; 187:14-23))).)  While that
may be true, Rountree also testified that she believed she was made out to be the
"bad guy" based on the way she was being treated by Rogers.   (*See* D. App. 43, 45-
46 (Rountree Depo. 173:17-20; 175:23-176:7).)  Specifically, Rountree testified that
she had "worked with [Rogers] the day before, and he didn't have that [] type of
behavior with [her];" on that prior occasion, he had assigned her to work "where he
knew [she] could excel."  (*See* D. App. 48-49, Rountree Depo. 179:16-:25.)  By
contrast, on the day of the altercation, Rogers assigned Rountree to unload trailers

with items that were too heavy for her to lift and then ignored her when she asked for help.  (*See* D. App. 50, (Rountree Depo. 182:8-24).)

Viewing this evidence in a light favorable to Rountree, the undersigned concludes that Rountree had personal knowledge about her interaction with Rogers, and while her belief regarding why she believed Rogers ignored her was based on personal perception, based on her explanation it was neither "unreasonable" nor "improbable," as FedEx contends.  (*See* Reply at 5.)  Similarly, Rountree had personal knowledge about her interaction with Hammontree, and her belief that Hammontree "intended to discipline" her "for mentioning the EEOC" (*see* P. App. 7 ¶ 20 (Rountree Decl.)) is based on her personal knowledge, as well as supported by other evidence, including Rountree's deposition testimony (*see, e.g.*, D. App. 56 (Rountree Depo. 192:2-193:25)).  *Davis*, 792 F.2d at 1304.

FedEx also argues that Paragraph 20 of Rountree's Declaration should be disregarded under the "sham-affidavit rule"[14] based on inconsistent statements from Rountree regarding whether her suspension was paid or unpaid.  (*See* Reply at 6) (citing D. App. 58 (Rountree Depo. 194:6-8); P. App. 7 ¶ 20 (Rountree Decl.)).)  As an initial matter, the undersigned notes that this inconsistency appears multiple times

---

[14] The sham-affidavit rule stands for the proposition that a nonmoving party may not manufacture a dispute of fact merely to defeat a motion for summary judgment."  *See Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000).  ("If a party who has been examined at length on deposition could raise an issue of fact simply by submitting the affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.") (quoting *Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969)).

throughout Rountree's brief (*see, e.g.*, P. Br. at 12, 19) and could just as likely be due to carelessness or scrivener's error as a sham declaration.  More importantly, as discussed further below, Rountree has presented sufficient evidence to create a genuine issue of material fact as to whether she suffered an adverse employment action—regardless of whether her suspension was paid or unpaid—and the undersigned therefore declines to reject Paragraph 20 on this basis.

For these reasons, FedEx's objections to Paragraphs 16 and 20 of Rountree's Declaration are **OVERRULED**.

### B.    Rountree's Sexual Harassment Claim

Title VII of the Civil Right Act of 1964 provides, in relevant part, that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e–2(a)(1).

Rountree may prove her sexual harassment claim either by establishing that a tangible employment action was taken against her because of her sex (also known as quid pro quo harassment) or by establishing that a supervisor with immediate or successively higher authority discriminated against her because of her sex and created a hostile or abusive environment.  *See Faragher v. City of Boca Raton*, 524 U.S. 775, 786–87 (1998); *Burlington Indus. v. Ellerth*, 524 U.S. 742, 751 (1998); *Wyatt v. Hunt Plywood Co., Inc.*, 297 F.3d 405, 409 (5th Cir. 2002); *Casiano v. AT&T Corp.*, 213 F.3d 278, 283–84 (5th Cir. 2000); *Butler v. Ysleta Indep. Sch. Dist.*, 161 F.3d 263, 268–

38

69 (5th Cir. 1998). If an employee can show that a tangible employment action resulted from the employee's response to sexual harassment, the employer is vicariously liable for the actions of the supervisor under Title VII; no affirmative defense will be heard. *Casiano*, 213 F.3d at 284. If the employee did not suffer a tangible employment action, the suit is a "hostile environment" case. *See id*.

### 1. Rountree has waived her quid pro quo harassment claim.

Rountree's complaint asserted a cause of action for quid pro quo sexual harassment. (*See* Compl. ¶ 17.) FedEx fully briefed this issue on summary judgment, arguing that Rountree failed to link any tangible employment action to her acceptance or rejection of Thomas's alleged harassment. (*See* D. Br. at 19-20.)

Upon review of the record, it is evident that Rountree has failed to pursue her quid pro quo harassment claim beyond her initial complaint and has failed to do so in her summary judgment opposition. Quid pro quo harassment was not even mentioned, much less argued, in Rountree's response to the motion for summary judgment. (*See generally* P. Br.) An issue raised in the complaint but ignored at summary judgment may be deemed waived. *See Vaughner v. Pulito*, 804 F.2d 873, 877 n.2 (5th Cir.1986) ("If a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived and cannot be considered or raised on appeal."); *see also Criner v. Tex. N.M. Power Co.*, 470 F. App'x 364, 368 (5th Cir. 2012); *Keenan v. Tejeda*, 290 F.3d 252, 262 (5th Cir. 2002); *Aldrup v. Caldera*, 274 F.3d 282, 288 (5th Cir. 2001).

Based on the foregoing, Rountree's quid pro quo harassment claim should be deemed waived, and the Court should grant summary judgment in favor of FedEx on this claim.

### 2. Rountree's hostile work environment claim fails as a matter of law.

To establish a prima facie sexual harassment claim based on hostile work environment, an employee must show: (1) she belongs to a protected class; (2) she was subject to unwanted or unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a "term, condition, or privilege of employment"; and (5) the employer "knew or should have known of the harassment and failed to act promptly to address it." *Cerda v. Blue Cube Operations, L.L.C.*, 95 F.4th 996, 1003 (5th Cir. 2024).

In *Faragher*, 524 U.S. 775, and *Ellerth*, 524 U.S. 742, the Supreme Court "modified this test with respect to cases where the alleged harasser is a supervisor with immediate or higher authority over the harassed employee." *Holmes v. N. Texas Health Care Laundry Coop. Ass'n*, 304 F. Supp. 3d 525, 542 (N.D. Tex. 2018) (citing *Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999)). "In such cases, the employee need only meet the first four elements of the test. If a plaintiff can prove the first four elements, an 'employer is subject to vicarious liability to a victimized employee.'" *Id.* (quoting *Watts*, 170 F.3d at 509 (quoting, in turn, *Faragher*, 524 U.S. at 807)).

If the employee fails to establish all four elements, Title VII does not impose vicarious liability on the employer; but if the employee makes a successful showing, vicarious liability attaches unless the employer successfully establishes both prongs of

the *Ellerth/Faragher* affirmative defense. *See Casiano*, 213 F.3d at 284. To prevail on this affirmative defense, the employer must prove that (1) it exercised reasonable care to prevent and correct promptly any such sexual harassment, and (2) the employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise. *See Faragher*, 524 U.S. at 807; *Casiano*, 213 F.3d at 284.

FedEx contends that Rountree's hostile work environment claim fails as a matter of law because: (1) the summary judgment evidence fails to establish that Rountree was subjected to "unwelcome sexual harassment;" (2) Rountree fails to present evidence that would permit a jury to determine that the alleged harassment was sufficiently severe or pervasive to affect a "term, condition, or privilege," of her employment; and because Thomas was not a "supervisor" for purposes of a Title VII, Rountree cannot meet the fifth prong of her hostile work environment claim— that FedEx knew or should have known of the harassment and failed to take prompt remedial action. (*See* D. Br. at 18-20.) FedEx also contends that, even if the alleged harassment was severe or pervasive enough to constitute a Title VII violation, it would be entitled to establish the *Ellerth/Faragher* affirmative defense. (*See* D. Br. at 21-25.)

In response, Rountree contends that she has produced sufficient evidence to establish her claims for hostile work environment sexual harassment and to establish that FedEx is not entitled to the *Faragher/Ellerth* defense. (*See* P. Br. 14-18.)

41

For harassment to be actionable, it must be sufficiently severe or pervasive "to alter the conditions of [the victim's] employment and create an abusive working environment." *See Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)). In determining whether an environment is "hostile" or "abusive," courts look at the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (quoting *Harris*, 510 U.S. at 23). Simple teasing, offhand comments, sporadic use of offensive language, occasional jokes related to a claimant's protected trait, and isolated incidents (unless extremely serious) will generally not amount to discriminatory changes in the terms and conditions of employment. *See EEOC v. Boh Bros. Constr. Co., L.L.C.*, 731 F.3d 444, 461 (5th Cir. 2013).

A hostile work environment must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim did in fact perceive to be so." *See Faragher*, 524 U.S. at 787; *see also Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 263–64 (5th Cir. 1999). The objectionable conduct must affect the "conditions" of the alleged victim's employment. *Oncale v. Sundowner Offshores Svcs., Inc.*, 523 U.S. 75, 81 (1998). Title VII does not prohibit all verbal or physical harassment in the workplace but is directed only to an employer's discrimination "because of" sex. *Indest*, 164 F.3d at 264. "[C]asual or isolated

42

manifestations of a discriminatory environment are not sufficient to demonstrate a hostile working environment under the law." *Gearhart v. Eye Care Centers of Am., Inc.*, 888 F. Supp. 814, 825 (S.D. Tex. 1995). "Incidental, occasional or merely playful sexual utterances will rarely poison the employee's working conditions to the extent demanded for liability." *Indest*, 164 F.3d at 264.

The Fifth Circuit has also emphasized that the Supreme Court's cases regarding sexually hostile work environment are ones that involve allegations of "extensive, long-lasting, unredressed, and uninhibited sexual threats or conduct that permeated the plaintiff's work environment." *See id.* (citing *Faragher*, 524 U.S. 775; *Ellerth*, 524 U.S. 742; *Oncale*, 523 U.S. 75; *Harris*, 510 U.S. 17; *Meritor*, 477 U.S. 57). Thus, the sexual harassment standard is a "demanding" one to reach. *See Indest*, 164 F.3d at 264. As the Supreme Court explained, these high standards are required to ensure that Title VII does not become a "general civility code." *See Faragher*, 524 U.S. at 788.

### a. Rountree's evidence raises a genuine dispute of material fact as to whether the harassment alleged was sufficiently severe or pervasive.

Contrary to FedEx's argument that Thomas's comments amount to no more than non-actionable "flirtation, sexual innuendo" (*see* D. Br. 18), Rountree has presented evidence of a hostile work environment based on Thomas's unwelcome sexual advances. "Unwelcome sexual harassment" includes "sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature that is unwelcome in the sense that it is unsolicited or unincited and is undesirable or

43

offensive to the employee." *Marquez v. Voicestream Wireless Corp.*, 115 F. App'x 699, 701 (5th Cir. 2004) (quoting *Wyerick v. Bayou Steel Corp.*, 887 F.2d 1271, 1274 (5th Cir. 1989)).  "The gravamen of any sexual harassment claim is that the alleged sexual advances were 'unwelcome.'" *Meritor*, 477 U.S. at 68 (quoting 29 C.F.R. § 1604.11(a)).

Viewing the summary judgment evidence in a light favorable to Rountree, Thomas began making sexual comments to Rountree within days of her beginning work for FedEx, including stating that Rountree had a "bubble butt," a "fat ass," and was a "wide load."  (*See* P. App. 4 ¶ 2 (Rountree Decl.); P. App. 81 ¶ 4 (Reddick Decl.).)  Thomas made no secret of his sexual interest in Rountree.  (*See id*.)  His sexual comments occurred on a near-daily basis and interfered with Rountree's ability to complete her work in a timely manner.  (*See id*.)  Rountree alleges that on one occasion, Thomas told her to "give me the pussy one time and you'll never have to get on a truck again," and on another occasion, he requested that Rountree have sex with him.  (*See* P. App. 4 ¶ 3 (Rountree Decl.).)

FedEx argues that Rountree has failed to raise a genuine dispute of material fact that the alleged harassment was sufficiently severe or pervasive to affect a "term, condition, or privilege," of her employment.  (*See* D. Br. at 18-19.)

> [T]he test—whether the harassment is severe or pervasive is stated in the disjunctive.  An egregious, yet isolated, incident can alter the terms, conditions or privileges of employment and satisfy the fourth element necessary to constitute a hostile work environment.  The inverse is also true: Frequent incidents of harassment, though not severe, can reach the level of "pervasive," thereby altering the terms, conditions, or privileges of employment such that a hostile work environment exists.  Thus, "the

required showing of severity or seriousness of the harassing conduct
varies inversely with the pervasiveness or frequency of the conduct."

*Lauderdale v. Texas Dep't of Crim. Just., Institutional Div.*, 512 F.3d 157, 163 (5th Cir.
2007) (footnote and citations omitted).  "Workplace conduct is not measured in
isolation.  In order to deem a work environment sufficiently hostile, all of the
circumstances must be taken into consideration."  *Hernandez v. Yellow Transp., Inc.*,
670 F.3d 644, 651 (5th Cir. 2012) (citations and internal quotation marks omitted).

Analyzing the alleged harassment under the requisite totality of the
circumstances, including the frequency and severity of Thomas's conduct, as well as
the extent to which his conduct unreasonably interfered with Rountree's work
performance, the evidence shows the existence of a genuine dispute of material fact
as to whether Thomas's conduct was sufficiently severe or pervasive to preclude
summary judgment.  *See Harris*, 510 U.S. at 23; *Meritor*, 477 U.S. 57 at 67.  As noted
above, Thomas made sexually harassing comments to Rountree "on a near daily
basis," including making sexual comments about her body and indicating that he
wanted to have sex with her; called her at home on her day off; told her he had the
power to decrease her hours; threatened to fire her; and humiliated her by inviting
her to come in on her day off to apply and train for a non-existent management
position.  (*See* P. App. 4 ¶¶ 2, 7, 9, 10 (Rountree Decl.).)

Rountree's allegations are distinguishable from those raised in *Hernandez*,
where Hernandez was called a racially derogatory term on one occasion and once
saw a poster or letter that was derogatory about Hispanics; another employee once

45

heard Mexicans referred to in a derogatory manner over a company radio and had seen a discriminatory posting or drawing. *Hernandez*, 670 F.3d at 652. The district court found (and the Fifth Circuit agreed) that while these incidents were "plainly offensive to a Hispanic person," "they could not support a hostile work environment claim because they were so few and occurred over more than a decade of employment." (*See id*.) (internal quotation omitted). As the Fifth Circuit noted, "only two incidents . . . over a ten-year period, [did] not create a fact issue that the harassment was 'sufficiently severe or pervasive' such that 'an abusive working environment' had been shown." *See id.* (citing *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir.2002)). Here, Rountree alleges the harassment occurred "on a near-daily basis" and began from the beginning of her employment. (*See* P. App. 4 ¶ 2 (Rountree Decl.).)

Rountree's evidence of severe or pervasive harassment is also distinguishable from the allegations in *Russell v. Univ. of Texas of Permian Basin*, 234 F. App'x 195 (5th Cir. 2007), and *Hockman v. Westward Communications, LLC*, 407 F.3d 317 (5th Cir. 2004). In *Russell*, the Fifth Circuit concluded that the alleged harasser's conduct—rubbing the side of Russell's hand and her thigh on one occasion each, twice intimating that she wanted to move to New York City with Russell, once stating that she would not mind watching a movie in bed with Russell, and calling Russell "honey" or "babe" on numerous occasions—was neither severe nor pervasive. *Russell*, 234 F. App'x at 205. In *Hockman*, the Fifth Circuit concluded that the plaintiff could not establish a hostile work environment based on the facts that the

46

alleged harasser, among other things, commented about another employee's body, slapped her on the behind with a newspaper, grabbed or brushed against her breast and behind, and once attempted to kiss her. *Hockman*, 407 F.3d at 327–28.

Although not specifically stated by the Fifth Circuit, it appears the Court measures the number of offensive acts that take place during a certain period to determine pervasiveness—because the harassment must consist of more than "simple teasing, offhand comments, and isolated incidents (unless extremely serious)." *Sanders v. Christus Santa Rosa PASC*, 995 F. Supp. 2d 626, 634 (W.D. Tex. 2014) (citing *Faragher*, 524 U.S. at 788). By contrast, the Fifth Circuit concluded in *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396 (5th Cir. 2013), that two male employees "sniffing and hovering over a woman in a small, confined space could be viewed by a reasonable jury as harassment based on Royal's sex." *Id.* at 402. The court found that the conduct was sufficiently pervasive because "[plaintiff] worked in a small office area and was subject to each man's objectionable conduct approximately twelve times over four days. It determined that "[t]hese menacing acts, which were done over [plaintiff] as she was sitting and some of which were done by a man who had previously been in prison, can certainly be seen as 'physically threatening,' 'humiliating,' and frequent, three factors that indicate sexual harassment[.]" *Id.* at 402. The court also acknowledged that the short time frame at issue lent itself to finding the conduct pervasive. *Id.* at 403.

Although the conduct complained of in this case is not the type of physically threatening, humiliating, and frequent conduct the court found actionable in *Royal*,

neither is it the type of "infrequent conduct" found to be not pervasive enough to

sustain a hostile work environment claim in *Russell* and *Hockman*. And while each

individual incident alleged by Rountree may not be "sufficiently severe" by itself,

taken together and viewing all evidence in the light most favorable to Rountree and

drawing all reasonable inferences in her favor, the undersigned finds that the

evidence of harassment presented indicates more than "incidental, occasional or

merely playful sexual utterances," such that a reasonable jury could find that

Thomas's behavior was both objectively and subjectively demeaning and humiliating

to Rountree, *see Faragher*, 524 U.S. at 787; *Indest*, 164 F.3d at 263–64, and arguably

affected the conditions of her employment, *Oncale*, 523 U.S. at 81.

### b. The evidence fails to establish, as a matter of law, that Thomas was a supervisor for purposes of Title VII.

FedEx argues that Thomas was not a "supervisor" for purposes of a Title VII.

(*See* D. Br. at 21.) As explained above, "it matters whether a harasser is a

'supervisor' or simply a coworker." *Matherne v. Ruba Mgmt.*, 624 F. App'x 835, 839

(5th Cir. 2015). "[W]here the alleged harasser is a supervisor with immediate or

higher authority over the harassed employee," the employee need only prove the first

four elements of a hostile work environment claim. *Holmes v. N. Texas Health Care*

*Laundry Coop. Ass'n*, 304 F. Supp. 3d 525, 542 (N.D. Tex. 2018) (internal citations

and quotation marks omitted).

A "supervisor" for Title VII purposes is an employee "empowered by the

employer to take tangible employment actions against the victim." *Vance v. Ball State*

*Univ.*, 570 U.S. 421, 424 (2013).  "Tangible employment action" means "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  *Id.* at 431.  Mere "leadership responsibilities" like "the authority to assign [job responsibilities]" are insufficient to place an employee in the "unitary category of supervisors" with authority to cause a "significant change in employment status."  *Matherne*, 624 F. App'x at 840 (quoting *Vance*, 570 U.S. at 432-33, 441).

In her response, Rountree argues that the following evidence supports a finding that Thomas is a "supervisor" for purposes of Title VII: (1) the term "supervisor is in Thomas's title"; (2) multiple employees testified that Thomas was a "supervisor;" and (3) FedEx claims it terminated Rountree for failing to follow another "operations supervisor's directions [Rogers]."  (*See* P. Br. at 16.)

Rountree's arguments that Thomas was a supervisor fail.  A supervisor under the law is not a matter of title.  *See Hayes v. Laroy Thomas, Inc.*, No. 5:05CV195, 2007 WL 128287, at *15 (E.D. Tex. Jan. 11, 2007) ("[T]he essence of supervisory status is the authority to affect terms and conditions of employment, primarily consisting of the power to hire, fire, demote, promote or transfer, or discipline employees[.]" (internal citations and quotation marks omitted)); *Beck v. Tex. Dep't of Crim. Justice*, No. 2:18-CV-218-Z-BR, 2020 WL 8298905, at *6 (N.D. Tex. Nov. 23, 2020) (citing *Spencer v. Schmidt Elec. Co.*, 576 F. App'x 442, 447-48 (5th Cir. 2014) (foreman who directed employees on how to perform jobs was not a "supervisor' because he had no authority to take tangible employment actions)), *adopted*, 2021 WL 272213 (N.D.

49

Tex. Jan. 27, 2021).  Rountree's argument failed to address whether Thomas had authority to make tangible employment decisions that would directly affect Rountree's employment.  (*See id*.)

Other than observing that the term "supervisor" is included in Thomas's job title of "Operations Supervisor" (*see* P. Br. at 16), Rountree has put forth no evidence showing that Thomas had the power to hire, fire, promote, reassign with significantly different responsibilities, or cause a significant change in her benefits. *See Vance*, 570 U.S. at 431.  FedEx avers that Thomas did not have this type of authority.  (*See* D. App. 101 ¶ 19 (Perry-Thaxter Decl.) ("He did not have the authority to hire, fire, or schedule package handlers.").)  Hunsaker testified that, other than "showing some small aspects about the job [such as] how radios work, maybe how the computer system [works], Thomas had no authority to select any employee for a promotion.  (*See* D. App. 88-89, 94 (Hunsaker Depo. 108:11-109:10; 128:16-25).)  Hunsaker further testified that sort managers (for example, Lacey) would make "selections for the lower levels, which would be your trainers, your ops supervisors, which is now the new term for ops managers, ops admins, and those natures[.]  (*See* D. App. 88-89 (Hunsaker Depo. 108:24-109:6).)  Furthermore, Rountree admitted in her deposition that Thomas was not in charge of scheduling. (*See* D. App. 26, 28, 30 (Rountree Depo. 136:12-15; 138:10-15; 140:19-25).)

As far as the undersigned can tell from reviewing the record, the only power Thomas had over Rountree was the ability to direct her tasks and assign her to a specific work area to load and unload packages.  Handlers are trained to load and

unload packages from trailers and assigned to a specific bay via a smartphone application.  (*See* D. App. 62-63 (Rountree Depo. 203:18-23; 204:2-3); D. App. 5-6 (Lacey Depo. 14:15-15:16).)  An employee with "mere leadership responsibilities" like the "authority to assign job responsibilities," without more, is not a supervisor. *Matherne*, 624 F. App'x at 840.  Therefore, Thomas is not a supervisor for purposes of vicarious liability under Title VII, and Rountree must establish the fifth element— that FedEx knew or should have known of the harassment and failed to take prompt remedial action.

### c. Rountree has failed to establish that FedEx knew or should have known of the harassment and failed to take prompt remedial action.

FedEx argues that Rountree cannot meet the fifth prong of her hostile work environment claim—that FedEx knew or should have known of the harassment and failed to take prompt remedial action.  (*See* D. Br. at 21.)  FedEx avers that when Rountree filed her harassment complaint in March 2023, it promptly investigated her allegations and took actions that were "reasonably calculated to end the harassment," including separating Thomas and Rountree.  (*See* D. Br. at 21-22) (citing *Garcia v. Elf Atochem N. Am.*, 28 F.3d 446, 451 (5th Cir. 1994).)  "[Taking] allegations seriously, [conducting] prompt and thorough investigations, and [immediately] implementing remedial and disciplinary measures based on the results of such investigations" constitutes sufficient remedial action.  *Williams-Boldware v. Denton Cnty.*, 741 F.3d 635, 640 (5th Cir. 2014) (quoting *Carmon v. Lubrizol Corp.*, 17 F.3d 791, 795 (5th Cir. 1994)) (cleaned up).

On or around March 15, 2023, Rountree complained to HR about Thomas's sexual comments and his promise to train her for promotion to a management position.  (*See* P. App. 55, 58 (Hunsaker Depo. 108:14-108:10 & 111:3-24); P. App. 5 ¶ 11 (Rountree Decl.).)  On March 16, 2023, Perry-Thaxter "submitted an Alert Line complaint on Rountree's behalf and began investigating her complaint." (*See* D. App. 102 ¶ 11 (Perry-Thaxter Decl.).)  Thomas was moved out of Rountree's area after FedEx received Rountree's complaint.  (*See* D. App. 100 ¶ 10 (Perry-Thaxter Decl.); P. App. 53-54 (Hunsaker Depo. 101:21-102:4).  During the investigation, Perry-Thaxter interviewed Rountree, Thomas, Lacey, and Banks.  (P. App. 16-17, 35 (Hunsaker Depo. 16:9-17:8; 75:10-75:19).)  Perry-Thaxter completed her investigation on April 4, 2023, determined the complaints were unsubstantiated, and sent a letter to Rountree explaining that the investigation had been concluded and that "action was taken accordingly."  (D. App. 101 ¶ 20 (Perry-Thaxter Decl.); D. App. 239, (Investigation Report); D. App. 250 (March 28, 2023 Letter to Rountree).)

Because Rountree has not carried her burden by responding with evidence that FedEx's remedial action was inadequate, she cannot establish a prima facie case of hostile work environment discrimination, and therefore, FedEx is entitled to summary judgment on Rountree's hostile environment sexual harassment claim.

### d.  Because Rountree's hostile environment claim fails as a matter of law, FedEx's *Ellerth/Faragher* affirmative defense is inapplicable.

FedEx also seeks summary judgment in the alternative on its *Ellerth/Faragher* affirmative defense.  Under Title VII, an employer's liability for workplace

harassment depends on the status of the harasser. *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013). "Normally, an employer is strictly liable for a supervisor's harassment of an individual whom he or she supervises." *Pullen v. Caddo Parish Sch. Bd.*, 830 F.3d 205, 209 (5th Cir. 2016) (citation omitted). "The *Ellerth/Faragher* affirmative defense is an exception and is available to employers when a plaintiff alleges sexual harassment by a supervisor but does not claim that the harassment resulted in a tangible employment action." *Id.*

As noted above, the summary judgment evidence establishes that Thomas is not a supervisor for purposes of vicarious liability under Title VII, and therefore, the Court need not consider FedEx's invocation of the *Ellerth/Faragher* affirmative defense. *See, e.g.*, *Curry v. D.C.*, 195 F.3d 654, 659-60 (D.C. Cir. 1999) (making a distinction between standards of liability "depending on who does the harassing" and noting that plaintiff's negligence, as considered under *Faragher*, is only relevant if the alleged harasser is a supervisor).

## C. Rountree's Retaliation Claim

To establish a prima facie case of retaliation, a plaintiff must show that: (1) she engaged in activity protected by the discrimination laws; (2) she was subjected to an adverse employment action subsequent to the protected activity; and (3) a causal connection exists between her participation in the protected activity and the adverse employment action. *See Holt v. JTM Indus., Inc.*, 89 F.3d 1224, 1226 (5th Cir. 1996). If the plaintiff makes a prima facie case, the employer must articulate a legitimate, non-retaliatory reason for its action. *See Ray v. Tandem Computers, Inc.*, 63 F.3d 429,

433 (5th Cir. 1995).  Following the articulation of the non-retaliatory reason, the plaintiff must prove the articulated reason is merely pretextual and that "but for" her protected activity, she would not have been discharged.  *See Ray*, 63 F.3d at 433.  To defeat summary judgment, the plaintiff must produce substantial probative evidence that the proffered reasons were not the true reason for the employment decision and that the real reason was her participation in the alleged protected activity.  *See Chaffin v. John H. Carter Co.*, 179 F.3d 316, 319–20 (5th Cir. 1999); *see also Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483 (5th Cir. 2004).

### 1.  Genuine issues of material fact remain regarding Rountree's retaliation claim.

FedEx contends that summary judgment should be granted because Rountree cannot establish the second and third prima facie elements of her retaliation claim—that she was subjected to an adverse employment action subsequent to the protected activity and that there was a causal connection between the alleged protected activity and her termination.  (*See* D. Br. at 26-28.)

FedEx also argues that Rountree's summary judgment response failed to specifically address the prima facie elements of her retaliation claim, failed to identify the adverse action she alleges she was subjected to, and failed to address FedEx's argument that Hammontree's offer to move Rountree to the C-Wing after her dispute with Rogers was the adverse action underlying her claim.   (*See* Reply at 15.) According to FedEx, Rountree "apparently only relies on her termination as the sole adverse employment action in this case" and "[s]ummary judgment should be

54

sufficient on this point alone, as Rountree cannot address pretext unless she first establishes her prima facie burden." (*See id*.) For the reasons that follow, the undersigned declines to adopt FedEx's reasoning regarding Rountree's retaliation claim and concludes that summary judgment is not warranted on this basis.

    **a. Fact issues remain as to whether Rountree was subjected to an adverse employment action after she reported Thomas's alleged harassment.**

Regarding the second prima facie element, FedEx contends that the adverse employment action alleged by Rountree was Hammontree's offer to move Rountree to the C-Wing after her altercation with Rogers, which does not constitute an adverse action. (*See* D. Br. at 26-28.) Contrary to FedEx's contention, however, Hammontree's offer to move Rountree to the C-Wing was not—or at least not the only—adverse action underlying Rountree's retaliation claim. Rountree alleges in her complaint that "[she] was retaliated against by being made to work harder jobs in worse conditions, by being suspended, and ultimately terminated." (*See* Compl. ¶ 20.) And while Rountree's summary judgment response may not have included elaborate detail regarding each prima facie element of her retaliation claim, her summary judgment response repeats similar allegations as those stated in her complaint, and the evidence presented, viewed in the light most favorable to Rountree, creates a genuine issue of material fact as to whether Rountree suffered an adverse employment action.

Rountree first argues that she experienced an adverse employment action when Rogers assigned her a heavier workload and Hammontree reassigned her to

the C-Wing to load packages.  (*See* D. App. 49, 50, 59 (Rountree Depo. 180:9-25;

182:6-13, 20-25; 183:1; 197:9-16).)  As an initial matter, Rountree's subjective belief

that these actions were "punishment" for reporting Rogers harassing behavior, no

matter how genuine, is insufficient to show retaliation without further evidence.  *See*

*Valderaz v. Lubbock Cnty. Hosp. Dist.*, 611 F. App'x 816, 824 (5th Cir. 2015) (citing

*Pennington v. Texas Dep't of Family & Protective Servs.*, 469 F. App'x 332, 339 (5th Cir.

2012).  More importantly, however, these are not adverse employment actions.

Adverse employment actions are defined as "ultimate employment decisions,"

such as "hiring, granting leave, discharging, promoting and compensating."  *Walker*

*v. Thompson*, 214 F.3d 615, 629 (5th Cir. 2000) (internal quotations omitted).

Imposing a higher or disproportionate workload on an employee compared to others

is not an "ultimate employment decision" subject to Title VII discrimination

scrutiny.  *Hart v. Life Care Ctr. of Plano*, 243 F. App'x 816, 818 (5th Cir. 2007)

(plaintiff assigned more difficult tasks than Hispanic coworkers did not suffer adverse

employment action); *Benningfield v. City of Houston*, 157 F.3d 369, 376–377 (5th Cir.

1998) (being assigned an unusually heavy workload involves administrative matters

and is not adverse employment action); *Wesley v. Yellow Transp., Inc.*, No. 3:05-CV-

2266-D, 2008 WL 5220562, at *2 (N.D. Tex. Dec. 12, 2008) (plaintiff assigned

heavier workload than Caucasian coworkers did not suffer adverse employment

action); *Julian v. DeJoy*, No. 4:21-CV-00718-O-BP, 2023 WL 5613927, at *7 (N.D.

Tex. July 17, 2023) (employer's denial of extra time to complete a work task did not

result in an adverse employment decision), *adopted*, 2023 WL 5620743 (N.D. Tex. Aug. 30, 2023), *aff'd*, No. 23-11101, 2024 WL 4433076 (5th Cir. Oct. 7, 2024); *see also Wojciechowski v. Nat'l Oilwell Varco, L.P.*, 763 F. Supp. 2d 832, 855 (S.D. Tex. 2011) (receiving heavier work assignments than similarly situated male employees did not constitute an adverse employment action for Title VII).  Therefore, Rountree cannot establish the second prong of her retaliation claim based on her contention that she was assigned a heavier workload.

However, Rountree also alleges that she was retaliated against by being suspended and ultimately terminated.  The fact that Rountree was placed on suspension and then terminated constitutes an adverse employment action.  Viewing all evidence in the light most favorable to Rountree and drawing all reasonable inferences in her favor, the undersigned concludes that Rountree has established a genuine issue of material fact regarding the second prong of her retaliation claim.  Whether Rountree was subjected to an adverse employment action when she was suspended and terminated for her conduct is a fact question for a jury.

> **b. Rountree has presented evidence sufficient to show a causal connection between her sexual harassment complaint and her termination.**

FedEx argues that Rountree cannot establish the third prima facie element of her retaliation claim—the existence of a causal connection between the alleged protected activity and her termination.  (*See* D. Br. at 26-28.)  FedEx contends that Hammontree's statement about not moving managers because of Rountree and the

temporal proximity of that statement are not sufficient to establish that the reason for

Rountree's termination was retaliation for her complaint about Thomas.

"In evaluating whether the adverse employment action was causally related to

the protected activity, the court shall consider the temporal proximity between the

[protected activity] and the termination." *Mauder v. Metropolitan Transit Auth. of*

*Harris Cnty., Tex.*, 446 F.3d 574, 583 (5th Cir. 2006) (citation and internal quotation

marks omitted).  Further, an employee "does not have to show that the protected

activity is the only cause of [her] termination." *Id.* (citation omitted).  An employee,

however, "is required to show that the protected activity and the adverse

employment action are not completely unrelated." *Id.* (citing *Medina v. Ramsey Steel*

*Co.*, 238 F.3d 674, 684 (5th Cir. 2001)).

The evidence establishes that the events leading to Rountree's suspension and

termination occurred roughly two weeks after her complaint to HR regarding

Thomas's alleged sexual harassment.

- On or around March 15, 2023, Rountree complained to HR about Thomas's sexual harassment; shortly after which Perry-Thaxter informed Hammontree that Thomas needed to be moved to a different area while she investigated Rountree's allegations.  (*See* D. App. 100 ¶¶ 7-10 (Perry-Thaxter Decl.).)

- The incident with Rogers and Hammontree that resulted in Rountree being suspended occurred on March 29, 2025 at approximately 1:00 a.m.  (P. App. 18 (Hunsaker Depo. 24:16-24:24).)

- Hammontree reported the incident to Hunsaker the next morning.  (D. App. 074 (Hunsaker Depo. 25:13-17).)

- Hunsaker testified that due to the open investigation regarding Rountree's sexual harassment allegations he "wanted to ensure that the investigation

58

was completed before any type of disciplinary action was taken." (*Id.* 25:18-25.)

- Perry-Thaxter completed her investigation on April 4, 2023, determining that Rountree's complaints were unsubstantiated and notified Rountree that "action was taken accordingly." (D. App. 101 ¶ 20 (Perry-Thaxter Decl); D. App. 239 (Investigation Report); D. App. 250 (March 28, 2023 Letter to Rountree).)

- Rountree was terminated on either April 7 or April 10, 2023. (*See* D. Br. at 7, 20; D. App. 260 (EEOC Charge).)

Based on this evidence, Rountree has established temporal proximity between her sexual harassment complaint and her suspension and termination. Rountree has also presented evidence suggesting that her complaint was perceived negatively by Rogers and Hammontree (and perhaps other managers). Rogers's assigning Rountree a heavier workload—work that she stated she was physically incapable of performing—and then ignoring her requests for help, and Hammontree's statement that she was "not going to keep moving [ ] managers around because of [Rountree]" suggest the possibility that Rountree was receiving negative treatment because of her sexual harassment complaint. While Rogers's and Hammontree's actions toward Rountree are not sufficient to establish an adverse employment action, this evidence could support an inference that there was a causal connection between Rountree's harassment complaint and the events leading to her suspension and termination.

In sum, Rountree has shown that she engaged in protected activity by reporting Thomas' harassing behavior, that roughly two weeks after she complained to HR of harassment, she was placed on suspension after arguing with Rogers (who ignored her when she asked for help with heavy lifting) and Hammontree (who

negatively referenced Rountree's harassment complaint), and then terminated approximately one week later. Accordingly, the court finds that Rountree has stated a prima facie case for retaliation.

### 2. A reasonable juror could conclude that Rountree would not have been terminated "but for" her alleged protected activities.

Because Rountree has established a prima facie case of retaliation, the burden shifts to FedEx to offer a legitimate non-retaliatory reason for Rountree's termination. *See Ray*, 63 F.3d at 433. FedEx argues that it terminated Rountree's employment after she engaged in unprofessional misconduct and insubordination and after she ordered her immediate supervisor to move along, left the assigned work area without permission, and took an off-the-clock smoke break. (*See* D. Br. at 29.)

Because FedEx proffered legitimate, nondiscriminatory reasons for its decision to terminate Rountree's employment, the burden shifts back to Rountree to establish pretext. *Medina*, 238 F.3d at 685. Rountree contends that genuine issues of material fact exist as to whether Rountree's conduct during the altercation with Rogers and Hammontree was the true motivation for FedEx's decision to terminate Rountree or whether FedEx was motivated to terminate Rountree because of her complaint about Thomas. (*See* P. Br. at 18-19.)

Rountree admits that she lost her temper and that her behavior during her interaction with Rogers, Lacey, and Hammontree was inappropriate. (*See* P. Br. at 19; D. App. 59-60 (Rountree Depo. 197:13-16, 24-25; 198:1-3).) But according to Rountree's version of events, Rogers and Hammontree both treated Rountree

60

negatively because of her sexual harassment complaint and Thomas's reassignment as a result of the ensuing investigation.  On the date of the altercation, Rogers assigned Rountree a heavier workload (work that she testified she was physically incapable of performing), ignored her repeated requests for help, and "berated" her about not clocking out for a break, even though it was known that the time clock did not work.  (*See* D. App. 48 (Rountree Depo. 179:16-21,180:4-9, 17-25); *see also* P. App.6 ¶¶ 15-16 (Rountree Decl.); D. App. 49, 54-55 (Rountree Depo. 180:11-25; 190:6-191:14).)  When Hammontree intervened, she tried to move Rountree to a different work area and stated she was "not going to keep moving [ ] managers around because of [Rountree]."  (*See* P. Br. at 18-19; P. App. 6-7 ¶ 18 (Rountree Decl.).)  Rountree also avers that Hammontree became angry and demanded Rountree's employee badge only after Rountree said she would "take it up with the EEOC."  (*See* P. Br. at 18; P. App. 7 ¶¶ 19-20 (Rountree Decl.).)   This evidence could support a reasonable inference that Rogers and Hammontree perceived Rountree negatively based on her sexual harassment complaint and Thomas's reassignment as a result.

As to FedEx's contention that Rountree engaged in misconduct because she left the assigned work area without permission and took an off-the-clock smoke break, Rountree testified that it was common for employees to move around the bays without telling their assigned managers (*see* D. App. 53 (Rountree Depo.188:12-25)), and she did not punch out for her break because the time clock was broken (D. App. 54-55 (Rountree Depo.190:6-191:14).

61

Rountree also presents evidence indicating that she was subjected to suspension and, ultimately, termination for cursing and yelling—behavior that was allegedly a common practice in the FedEx facility and which would typically only result in a verbal or written warning. (*See* P. Br. at 19; P. App. 7 ¶¶ 20-23 (Rountree Decl.); P. App. 68-69 (Lacey Depo. 17:8-18:6).) Therefore, argues Rountree, her suspension and termination amounted to an adverse employment action in retaliation for her reporting Thomas' harassment to HR and threatening to contact the EEOC. (*See* P. Br. at 18-19; P. App. 6-7 ¶ 18 (Rountree Decl.).)

To the extent FedEx argues that Rountree attempts to create issues of material fact by "unsupported conjectures, speculation, and improbable inference" (Reply at 1), the undersigned finds that Rountree's subjective beliefs regarding how she was treated on March 29, 2023 are not wholly without support from evidence in the record explaining reasons for her belief. As noted previously, even self-serving evidence can create an issue of fact at the summary judgment stage, and how much weight to credit such evidence is an issue for the factfinder. *See Guzman*, 18 F.4th at 160-61; *Weathered*, 2023 WL 8628929, at *7.

Therefore, a reasonable jury could conclude that FedEx's proffered reason for Rountree's termination was pretextual and its real motivation was to retaliate against Rountree for her complaint against Thomas.

## IV. RECOMMENDATION

For all the reasons previously explained, the undersigned **RECOMMENDS** that FedEx's Motion for Summary Judgment (Dkt. No. 47) be **GRANTED** with respect to Rountree's quid pro quo and hostile work environment sexual harassment claims and **DISMISS** these claims with prejudice, pursuant to Federal Rule of Civil Procedure Rule 56(a). Because genuine disputes of material fact remain with respect to Rountree's retaliation claim, the undersigned **RECOMMENDS** that FedEx's Motion for Summary Judgment (Dkt. No. 47) be **DENIED** with respect to this claim.

FedEx's Motion to Strike Valarie Reddick's Declaration (Dkt. No. 53) and Rountree's motion to strike Andrea Perry-Thaxter's Declaration, embedded in her response to Defendant's motion for summary judge (*see* Dkt. No. 51), are both **DENIED**.

**SO RECOMMENDED** on June 25, 2025.

_____
BRIAN McKAY
UNITED STATES MAGISTRATE JUDGE

## NOTICE OF RIGHT TO OBJECT

A copy of these findings, conclusions, and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).